UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GABRIEL ECKARD,

          Plaintiff,

v.

CHARLES MITCHELL, *et al.*,

          Defendants.

Case No. C18-1810-RSM-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Gabriel Eckard is currently confined at the Snohomish County Jail ("SCJ") in Everett, Washington. He has filed a civil rights complaint under 42 U.S.C. § 1983 in which he alleges that his ongoing confinement in the disciplinary segregation unit of the SCJ violates his constitutional rights. Plaintiff names SCJ Classification Counselors Charles Mitchell and Alexis Wafstet, SCJ Classification Supervisor Kimberly Parker, and SCJ Captain David Hall as Defendants in his complaint. Defendants now move for summary judgment. Plaintiff has filed a response opposing Defendants' motion, and Defendants' have filed a reply brief in support of their motion. The Court recently received an additional submission from Plaintiff in the form of a declaration which is apparently being offered in support of Plaintiff's response to Defendants'

REPORT AND RECOMMENDATION - 1

summary judgment motion. Though this submission is untimely, the Court nonetheless considered the contents of the document in rendering its decision on Defendants' summary judgment motion.

The Court, having reviewed Plaintiff's complaint, Defendants' motion for summary judgment, all briefing of the parties, and the balance of the record, concludes that Defendants' motion for summary judgment should be granted, and that Plaintiff's complaint and this action should be dismissed with prejudice.

## II.    FACTS

On September 4, 2018, Plaintiff was transferred from a Washington Department of Corrections ("DOC") facility, the Monroe Correctional Complex, to the SCJ where he was booked on charges of persistent prison misbehavior and harassment/threats to kill. (*See* Dkt. # 16, Ex. A; Dkt. # 17, ¶ 6.) While in the booking area of the SCJ, Plaintiff declared that his blood would be all over the facility shortly and he then began slamming his head against the cell door. (Dkt. # 17, ¶ 3.) The booking sergeant, Daniel Young, ordered that Plaintiff be placed in a restraint chair on a self-harm watch. (*Id*., ¶ 4.) Sergeant Young also classified Plaintiff as a "two-deputy detail" because of his statements of self-harm and his extensive history of misbehavior while in DOC custody.[1] (*Id*., ¶ 5.)

Inmates at the SCJ are assigned to different types of housing based on a number of factors including their behavior, the security risk they present to themselves, deputies, and other inmates, and any keep-separate orders from other inmates. (Dkt. # 18, ¶ 2.) One of the resources SCJ classification specialists employ in determining appropriate housing assignments is the

---

[1] SCJ staff was aware at the time of Plaintiff's booking that he had been transferred to the facility directly from the DOC to face charges relating to his behavior while in DOC custody. (Dkt. # 17, ¶ 6.)

REPORT AND RECOMMENDATION - 2

Felony Offender Reporting System ("FORS") report which identifies the number of serious behavioral violations an inmate has committed in the preceding five years while in DOC custody. (*Id.*, ¶ 3.) Plaintiff had a FORS score of 386, meaning that at the time of his booking into the SCJ he had accumulated a total of 386 infractions during the preceding five years, including two for homicide/assault, seven for fighting, and 119 for threatening. (*Id.*, ¶ 4 and Ex. A.) According to SCJ Classification Specialist Shannon Waller, the FORS score for a typical inmate is from zero to three. (*Id.*, ¶ 4.)

Classification Specialist Alexis Wafstet classified Plaintiff as a maximum security inmate and assigned him to maximum security housing based on his extensive FORS history and his statements and self-harm behaviors in the booking area. (Dkt. # 19, ¶ 2.) Plaintiff's maximum security classification is reviewed on a regular basis, and notices regarding the classification decisions are sent to Plaintiff following each review. (*Id.*, ¶¶ 3, 4.) These notices include a description of the factors considered by the classification staff in making their decision as to whether to change Plaintiff's classification. (Dkt. # 23, ¶ 5 and Ex. A.) Plaintiff's status as a maximum security inmate has thus far been confirmed following each classification review based on his history and his ongoing behaviors at the SCJ. (Dkt. # 19, ¶ 3.) Plaintiff has been informed that less restrictive housing may be considered upon demonstration of appropriate behavior. (*See* Dkt. # 23, ¶ 5 and Ex. A.)

Plaintiff has continued to engage in violent, aggressive and threatening behavior since being booked into the SCJ. On October 19, 2018, Plaintiff threatened a nurse who was providing him medication. (Dkt. # 16, Ex. B.) After the nurse asked Plaintiff if he had his cup of water to take his medication, Plaintiff responded affirmatively, though with an expletive. (*Id.*) When the nurse placed the medication cup on the cuff port and asked Plaintiff to fill his cup, Plaintiff again

REPORT AND RECOMMENDATION - 3

responded with an expletive and slapped the medication away. (*Id.*) He then said to the nurse, "Fuck you bitch, I'll kick your fucking ass when I'm out." (*Id.*) Plaintiff was infracted for, and subsequently found guilty of, making threats to staff. (*Id.*)

On October 30, 2018, after making repeated comments of a sexual nature to a female corrections deputy, and being rebuffed by the deputy, Plaintiff threatened to come to the deputy's home when he was released to rape and kill her. (*Id.*, Ex. C.) Plaintiff was infracted for, and again found guilty of, harassment and making threats to staff. (*Id.*)

On December 15, 2018, Plaintiff threatened Classification Specialist Charles Mitchell while Mr. Mitchell was attempting to conduct a rule violation hearing for a previous infraction Plaintiff had received. (*Id.*, Ex. D.) Plaintiff was trying to speak to Mr. Mitchell about unrelated matters while ignoring Mr. Mitchell's attempts to conduct the hearing. (*Id.*) Mr. Mitchell advised Plaintiff that he would conduct the hearing without Plaintiff if his behavior continued, and Mr. Mitchell then walked away from Plaintiff's cell. (*Id.*) As Mr. Mitchell walked away, Plaintiff told Mr. Mitchell he would kill him once he got out of jail. (*Id.*) Plaintiff was infracted for, and subsequently found guilty of, making threats to staff. (*Id.*)

On December 30, 2018, Plaintiff became upset after receiving a sack meal instead of a meal on a tray. (*See id.*, Ex. E at 4.) Plaintiff smeared feces on the cuff port and door handle of his cell, and he urinated under the door. (*Id.*) After the outside of the cell had been cleaned, Plaintiff forced a mixture of water, urine, and feces under the door into the recreation area. (*Id.*) Shortly thereafter, Plaintiff pressed his call button and indicated he was having chest pains. (*Id.*) When the nurse arrived to speak with Plaintiff, Plaintiff refused to answer any of her questions and began yelling at one of the sergeants, telling him he would "put a bullet in your gook head and kill you." (*Id.*) Plaintiff thereafter stated that he would kill everyone who worked in the jail.

REPORT AND RECOMMENDATION - 4

(*Id.*) Plaintiff was infracted for, and found guilty of, disobeying staff, interfering with staff, indecent behavior, threats to staff, abuse of services, and harassment. (*Id.*)

On December 31, 2018, Plaintiff threatened yet another sergeant, yelling "I am getting out in a couple months and I will fucking kill you boy." (*Id.*, Ex. F.) He then urinated through the cell door creating a puddle on the floor outside the door. (*Id.*) Plaintiff was provided hearings on all of the infractions, though he consistently refused to participate in the hearings, and all of the infractions resulted in either a loss of good time or a reduction in Plaintiff's good time accrual rate. (*See id.*, Exs. B-F.)

Plaintiff filed his civil rights complaint on December 14, 2018. (Dkt. # 5.) Plaintiff asserts in his complaint that he was improperly sent to the disciplinary segregation unit upon being booked into the SCJ without being afforded a hearing for a specific rule violation. (*Id.*) He further asserts that he continues to be confined in disciplinary segregation and has never been afforded a hearing to determine whether he violated any rules. (*Id.*) Plaintiff claims that the conditions of his confinement amount to punishment in violation of his rights under the Due Process Clause of the United States Constitution. (*Id.*) Defendants, in their motion for summary judgment, argue that Plaintiff's due process rights were not violated by his placement in maximum security housing. (Dkt. # 15.)

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he

REPORT AND RECOMMENDATION - 5

has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is

REPORT AND RECOMMENDATION - 6

not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

### B. Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

### C. Due Process

The Supreme Court has held that a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Thus, when evaluating the constitutionality of conditions of pretrial confinement, the proper inquiry is whether those conditions amount to punishment of the detainee. *Id*. While the Due Process Clause protects pretrial detainees from punishment, not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense. *Id*. at 537. Thus, the test to be applied in determining whether particular restrictions and conditions imposed as a result of pretrial detention amount to punishment in the constitutional sense is whether there was an express intent to punish, or "whether an alternative purpose to which [the restriction] may

REPORT AND RECOMMENDATION - 7

rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. *Id*. at 538 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963)).

The Supreme Court has recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id*. at 546. The Supreme Court has further recognized that prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 547.

Defendants have submitted evidence in support of their motion for summary judgment demonstrating that Plaintiff was classified as a maximum security inmate at the time of his booking because he was deemed a threat to the safety and security of the facility and to himself. This conclusion was amply supported by information in the possession of jail staff and by Plaintiff's own behavior during the booking process which included threatening self-harm and slamming his head against the cell door, causing staff to place Plaintiff on self-harm watch. The FORS report obtained by SCJ classification staff revealed an extensive history of aggressive and threatening behavior by Plaintiff while he was in DOC custody. And, in fact, the charges upon which Plaintiff was booked into the SCJ included persistent prison misbehavior and harassment.

Plaintiff continued to exhibit aggressive and threatening behavior during his initial months in SCJ custody. He received a significant number of infractions for harassing and threatening to kill staff, and he demonstrated a willingness to disrupt jail operations by smearing

REPORT AND RECOMMENDATION - 8

fecal matter in and around his cell and urinating on the floor. All of these incidents reinforce the conclusion that Plaintiff poses a threat to the safety and security of the facility.

Plaintiff, in his response to Defendants' motion, maintains that his assignment to the maximum security unit was predetermined and had nothing to do with his behavior at the time he was being booked into the facility. (Dkt. # 21 at 1-2.) Plaintiff also disputes the assertion that he continues to receive letters regarding his housing status and claims he is unaware of whether reviews of his status still take place. (*Id*. at 4.) Plaintiff maintains that he poses no real security threat and notes that he has not attempted any assaults on jail staff or other inmates since being booked into the jail. (*Id*. at 6.) He claims as well that his placement in the maximum security unit is permanent and that there is no plan for his eventual release. (*Id*. at 7.) Plaintiff, however, offers no actual evidence to support these assertions.

As noted above, the evidence demonstrates that Plaintiff's classification status was based on a number of different factors. Defendants were not required to ignore Plaintiff's prior institutional behavior in determining his appropriate housing at the SCJ. Moreover, Plaintiff's behavior since his arrival at the SCJ reinforces Defendants' conclusion that he presents a threat to the safety and security of the facility. The evidence further establishes that Plaintiff's housing assignment is reviewed regularly, that he does, in fact, pose a security threat, and that he has been advised of what is expected of him if he wishes to be considered for less restrictive housing.

Plaintiff, in his various submissions, repeatedly references being placed in disciplinary segregation and complains about not having been afforded a hearing. However, despite the numerous disciplinary actions taken against Plaintiff during his time at the SCJ, there is no evidence in the record that Plaintiff's assignment to the maximum security module constitutes a disciplinary sanction. As SCJ Classification Supervisor Kimberly Parker explains, inmates are

REPORT AND RECOMMENDATION - 9

housed in the maximum security module for a variety of reasons, only some of which relate to disciplinary actions. (Dkt. # 23, ¶ 3.) Inmates may be assigned to the maximum security module if they are implicated in a high-profile or publicly notorious case that is likely to become widely known throughout the inmate population, if the inmate has extreme mental health issues, if the inmate requests such housing to be kept separate from other inmates, if the inmate is being placed into protective custody, or if the inmate is on phone restriction. (*Id.*) None of these are considered disciplinary actions. (*Id.*)

The evidence in the record supports the conclusion that Plaintiff's placement and retention in the maximum security module was not intended to punish him and that it is, indeed, reasonably related to legitimate government objectives; *i.e.*, ensuring the safety of Plaintiff, SCJ staff, and other inmates, and maintaining institutional security. Plaintiff fails to establish any due process violation arising out of his assignment to the maximum security module. Defendants are therefore entitled to summary judgment with respect to Plaintiff's due process claim.

### IV.   CONCLUSION

Based on the foregoing, this Court recommends that Defendants' motion for summary judgment be granted, and that Plaintiff's complaint and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed three pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days

REPORT AND RECOMMENDATION - 10

after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the date that objections were due.

DATED this 17th day of May, 2019.

*/s/ Michelle L. Peterson*
MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11